UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE VALDEZ-RODRIGUEZ,

      Plaintiff,

v.

U.S ATTORNEY GENERAL, U.S.
DEPARTMENT OF HOMELAND
SECURITY, SECRETARY; AND
ICE DIRECTOR FIELD OFFICE,

      Defendants.

Case No. 2:26-cv-1312-KCD-NPM

## ORDER

Petitioner Jorge Valdez-Rodriguez filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that his continued detention violates the Fifth Amendment. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 10.) For the reasons below, the petition is **DENIED**.

## I. Background

Valdez-Rodriguez, a Cuban citizen, was paroled into the United States in 1980. (Doc. 10-1 at 2.) He was ordered removed from the United States in 1999, and waived his right to appeal. He was not deported but instead placed on supervision. (*Id.* at 4.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

In October 2025, Valdez-Rodriguez was arrested on suspicion of battery. His custody was transferred to the U.S. Department of Homeland Security ("DHS") on December 8, 2025, and he was provided a notice of revocation of release the following day. (*Id.* at 4-5, 9.) He was also provided with an informal interview. (*Id.* at 6.)

ICE advised Respondents' counsel that the Cuban Government has denied repatriation. Other removal efforts have also failed. On February 13, 2026, Valdez-Rodriguez refused to comply with removal to Mexico, and he was returned to Florida. (*See* Doc. 10-1 at 9.) Earlier this month, DHS notified Valdez-Rodriguez of its plan to attempt again removal to Mexico. (*Id.* at 8.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

2

### III. Discussion

**A. Substantive Due Process**

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must

provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Valdez-Rodriguez cannot satisfy the initial temporal requirement. ICE took him into custody on December 8, 2025. (Doc. 10-1 at 4-5, 9.) Because he has been detained just over five months, he remains within the window in which his detention is presumptively reasonable. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"). And, in any event, Valdez-Rodriguez has refused removal to Mexico, which tolls the detention period. *See Akinwale*, 287 F.3d at 1052 n.4 (stating that the "removal period shall be extended ... if the alien ... acts to prevent [his] removal subject to an order of removal"); *Quo Zing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."). Thus, Valdez-Rodriguez's challenge to his continued detention fails. *Brown v. Gonzalez*, No. 4:06CV525-RH/WCS, 2007 WL 2790585, at *8 (N.D. Fla. Sept. 23, 2007).

Valdez-Rodriguez claims that his removal is not likely in the foreseeable future. (Doc. 1 at 7.) But this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

## B. Procedural Due Process

Valdez-Rodriguez also presses a procedural due process claim. (Doc. 1 at 7.) He argues Respondents have failed to provide him a meaningful opportunity to show he should not be detained. (*Id.* at 7.)

At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release and detaining him, like here, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). Valdez-Rodriguez received both. (*See* Doc. 10-1 at 4-6.) He got exactly what the Fifth Amendment requires—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Valdez-Rodriguez the requisite notice and an opportunity to be heard, his procedural due process claim fails.

## IV. Conclusion

Valdez-Rodriguez's due process claim under *Zadvydas* fails, so the habeas petition is **DENIED WITHOUT PREJUDICE** to him refiling a new petition should his current detention (which is not impeded) extend beyond the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on May 15, 2026.

Kyle C. Dudek
United States District Judge